# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

ERIC COLLINS,

    Plaintiff,

vs.

ROHRDANZ, et al.,

    Defendants.

) 1:12cv01245 DLB PC
)
) ORDER DISMISSING COMPLAINT
) FOR FAILURE TO STATE A CLAIM FOR
) WHICH RELIEF MAY BE GRANTED

    Plaintiff Eric Collins ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action on July 30, 2012.  Pursuant to Court order, he filed a First Amended Complaint ("FAC") on May 16, 2013.  The Court dismissed the FAC with leave to amend on January 2, 2014, and Plaintiff filed his Second Amended Complaint ("SAC") on February 7, 2014.  He names Dr. Duenas, R.N. Shortnacy, Dr. Paja, Dr. Igbinosa, Dr. Ahmed, Dr. Grey, R.N. LimJavate and Dr. Rorhdanz as Defendants.[1]

**A.** <u>**LEGAL STANDARD**</u>

    The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

---

[1] On August 27, 2012, Plaintiff consented to the jurisdiction of the United States Magistrate Judge for all purposes.

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

To state a claim, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Id. at 1949. This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

B.   **SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at the California Institution for Men in Chino, California. The events complaint of occurred while he was housed at Pleasant Valley State Prison ("PVSP") and the Correctional Training Facility in Soledad, California ("CTF").

Plaintiff alleges that he saw Defendant Duenas, his primary care provider, at PVSP concerning pain his left hand. She referred him to an orthopedic specialist, Dr. Lewis. Dr.

Lewis saw Plaintiff first via "telemed" while Defendant Shortnacy assisted. Dr. Lewis ultimately told Plaintiff that he would need surgery for carpal tunnel syndrome and a broken bone. Dr. Lewis prescribed a bone stimulator to heal the broken bone.

Plaintiff again saw Dr. Lewis via telemed, with Defendant Shortnacy assisting. Defendant Shortnacy was told to acquire a bone stimulator.

After a ninety-day delay, Plaintiff received his bone stimulator for sixty days of treatment.

Plaintiff saw Dr. Lewis again, and he determined that the bone stimulator was working. Dr. Lewis ordered Plaintiff to use the treatment for another ninety days.

During the prescribed treatment, Plaintiff was transferred to CTF. Defendant Shortnacy took the bone stimulator a few days prior to Plaintiff's transfer, despite Dr. Lewis' orders for Plaintiff to use it.

Once Plaintiff arrived at CTF, he asked about the bone stimulator. Despite doctor's orders, the bone stimulator was denied.

Plaintiff began complaining about his hand and the "process" started all over again.

After about six months, Plaintiff saw a hand specialist, Dr. Zewert. Dr. Zewert wrote a report indicating that the bone was collapsing and that surgery was necessary.

Plaintiff was scheduled for an operation to repair the bone and alleges that a medical hold should have been placed by Defendants LimJavate, Grey and Chudy. However, three days prior to his operation, Plaintiff was transferred back to PVSP.

Plaintiff alleges that he finally saw Dr. Paik. Dr. Paik told Plaintiff that the bone was beyond repair. He was eventually seen at the University of California, San Francisco. Medical staff there stated that the bone was beyond repair and that his bones would have to be removed and his wrist fused. This operation was performed 4.5 years after he sought help for a broken hand. Plaintiff contends that he is now permanently disabled.

In listing additional Defendants, Plaintiff alleges that Defendant Igbinosa, the CMO at PVSP, was aware of the worsening situation and deliberately ignored his duties to supervise the doctors in his control. He alleges that Defendant Igbinosa received a 602 concerning the situation and allowed him to sit in pain for 4.5 years.

Plaintiff further alleges that Defendant Paja was his primary care provider "for a period of time during the situation." SAC 7. He saw Plaintiff frequently and read all medical reports. Nonetheless, he "in his part" allowed Plaintiff to be transferred during treatment and without his bone stimulator. SAC 7. Plaintiff alleges that this caused his bone to deteriorate.

Defendant Ahmed was Plaintiff's primary care physician at CTF and was responsible for his health care "at a time." SAC 7. Defendant Ahmed ignored the reports and ended a treatment that was working.

Finally, Plaintiff alleges that Defendant Rohrdanz was his primary care physician once he returned to PVSP. Plaintiff had to start the process all over again, and it took three inmate appeals, over fifty medical requests, and a call from the Prison Law Office, before Plaintiff was sent to a "competent" surgeon at UCSF in 2012. SAC 8.

C.  **ANALYSIS**

   1.  **Rule 8**

As explained above, Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Unlike Plaintiff's prior complaints, the SAC contains only one date- 2012 (the year he received his surgery). Because an amended complaint supercedes the prior complaint, the Court cannot look to Plaintiff's earlier complaints to complete his allegations.

Without dates, Plaintiff's complaint is not specific enough to put Defendants on notice of the claims against them. However, even if Plaintiff's complaint set forth the dates of the alleged events, his allegations remain insufficient for the reasons discussed below.

2.      Eighth Amendment

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.  Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096) (internal quotation marks omitted).

   a. *Defendant Duenas*

Plaintiff alleges that Defendant Duenas was his primary care provider while he was at PVSP. Defendant Duenas sent him to an orthopedic specialist, who ultimately prescribed a bone stimulator and surgery.

In the prior screening order, the Court explained that Plaintiff failed to demonstrate that Defendant Duenas acted with deliberate indifference. Plaintiff's additional allegations do not correct this deficiency.

Plaintiff has simply added unsupported, conclusory statements in his attempt to state a claim against Defendant Duenas. He alleges, without factual support, that Defendant Duenas delayed treatment, allowed his bone stimulator to be taken, transferred him during treatment, and allowed him to endure pain for 4.5 years. He alleges that Defendant Duenas knew that his bone was collapsing after he returned from CTF and was "in part" responsible for the bone deterioration.

Plaintiff's conclusory allegations are insufficient to state a claim for relief. Iqbal, 129 S. Ct. at 1949. While factual allegations are accepted as true, legal conclusions are not. Id.

   b. *Defendant Shortnacy*

Plaintiff also fails to allege that Defendant Shortnacy acted with the requisite state of mind. He alleges that Dr. Lewis told Defendant Shortnacy to acquire a bone stimulator, but he received it after a ninety-day delay. He also alleges that Defendant Shortnacy took his bone stimulator prior to his transfer.

The Court previously explained to Plaintiff that his allegations against Defendant Shortnacy were insufficient to demonstrate that Defendant Shortnacy acted with deliberate indifference. Plaintiff's amendments also fall short of this standard. He contends that Defendant Shortnacy was "in part" responsible because she failed to obtain the bone stimulator within a reasonable amount of time, and allowed Plaintiff to be transferred during treatment. Again,

however, Plaintiff fails to provide any facts to support his conclusions.  He also alleges that she "deliberately" allowed Plaintiff to sit in pain, but his factual allegations do not support such a finding.

    c. *Defendant Igbinosa*

Plaintiff alleges that Defendant Igbinosa was the Chief Medical Officer at PVSP and was therefore responsible for all doctors.  Plaintiff alleges, again without factual support, that he was aware of the worsening situation and deliberately ignored his duties.  Plaintiff states that Defendant Igbinosa received a 602 concerning the situation, but allowed him to sit in pain for 4.5 years.

Plaintiff's allegations are not sufficient to demonstrate that Defendant Igbinosa acted with deliberate indifference.  Plaintiff once again sets forth conclusory allegations unsupported by facts.

Moreover, Plaintiff's main theory of liability against Defendant Igbinosa appears to be based on his failure to supervise the doctors at PVSP.  However, liability may not be imposed under a theory of respondeat superior, and there must exist some causal connection between the conduct of each named defendant and the violation at issue.  Iqbal, 556 U.S. at 676-77; Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Moss v. U.S. Secret Service, 711 F.3d 941, 967-68 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

Therefore, Plaintiff cannot allege a claim against Defendant Igbinosa based solely on his role as a supervisor.  Although Plaintiff states that he was "aware" of the situation and "received" a 602, he fails to set forth additional facts to support these allegations.

### d.  *Defendants Paja and Ahmed*

Plaintiff alleges that Defendants Paja and Ahmed were responsible for his care at some point in time, and that despite knowledge of the reports from hand specialists, allowed him to be transferred during treatment and without his bone stimulator.

As he has done with all previous Defendants, Plaintiff attempts to state a claim against Defendants Paja and Ahmed based solely on conclusory allegations devoid of factual support. His allegations are too vague to state a claim for relief.

### e.  *Defendant Rohrdanz*

Plaintiff contends that Defendant Rohrdanz was his primary care provider once he returned to PVSP.  However, although Plaintiff states that it took three inmate appeals, over fifty medical requests, and a call from the Prison Law Office, before he was sent to "competent" surgeon, he fails to explain Defendant Rohrdanz' role in any of his treatment.

### f.  *Chudy, LimJavate and Greg*

Plaintiff alleges that Defendants Chudy, LimJavate and Greg knew of his upcoming operation, but failed to place a medical hold.  He contends that the transfer caused a delay in treatment and that these Defendants were in part responsible for the delay.

Again, Plaintiff's allegations are too vague to state a claim.

## D.  **CONCLUSION AND ORDER**

Plaintiff's SAC fails to state a claim under section 1983.  Plaintiff has been afforded numerous opportunities to correct the deficiencies, but has failed to do so.  In the prior screening order, the Court notified Plaintiff that this would be his final opportunity to amend.  The Court does not find that further leave to amend is warranted.  Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, this action is DISMISSED, with prejudice, for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated: **July 8, 2014**      /s/ *Dennis L. Beck*
       UNITED STATES MAGISTRATE JUDGE